MORGAN B. MIZELL, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—LARCENY—WHEN VALUE OF STOLEN PROPERTY NOT REQUIRED TO BE ALLEGED OR PROVED—DESCRIPTION OF ANIMAL STOLEN.

1. Under section 2449 Rev. Stat. the penalty thereby prescribed follows the larceny of any of the domestic animals therein named, regardless of their value. In such cases where the grade of the offense or the penalty prescribed therefor is not measured by or dependent upon *the value* of the property stolen, but it determined entirely by the class or species of such property, is is not necessary in an indictment charging its larceny to allege any value; neither is it necessary to prove any value.

2. In an indictment under said section 2449 Rev. Stat. charging the larceny of any of the domestic animals therein named, it is not necessary to describe the animal stolen by its color, fleshmarks, marks or brands, but is sufficient if it describes the animal stolen by the general name of the genus to which it belongs,. giving the name of its owner, *e. g..*, "one cow, of the goods, chattels and property of A. T. G. P."

3. A taking of property, without a carrying away, or a carrying away, without a taking, is not larceny. The bare finding of a cow at large upon the common range where everybody's cattle roam at will, with the brand of two persons upon it, the one brand appearing to have been put upon it more recently than the other, and its ear-marks presenting the appearance of having been altered, with no one claiming it or in possession or control of it, and with no proof as to how, or when, or by whom the more recent marks and brand were put upon it, and with no proof showing a stealing, taking and carrying of it away by anyone, will not justify a conviction for the larceny of such cow of the persons whose brand is thus found to have been recently put upon it.

Writ of Error to the Circuit Court for Lee county.

The facts in the case are stated in the opinion.

*Wall & Stevens*, for Plaintiff in Error.

*Wm. B. Lamar*, *Attorney-General*, for the State.

TAYLOR, J.:

Morgan B. Mizell, the plaintiff of error, was tried and convicted at the Spring term, 1896, of the Circuit Court of Lee county for the larceny of a cow and sentenced to two years' imprisonment in the penitentiary, and asks a reversal of such sentence by writ of error. The indictment upon which he was tried was found at the Fall term, 1895, of said Circuit Court, and is as follows, omitting its formal parts: "That Morgan B. Mizell, late of the county of Lee, aforesaid, in the Circuit and State aforesaid, laborer, on the thirtieth (30th) day of December, in the year of our Lord one thousand eight hundred and ninety-three, with force and arms at and in the county of Lee, aforesaid, unlawfully, one cow, of the property, goods, and chattels of one A. Traves G. Parkinson, then and there being found, did feloniously and unlawfully take, steal and carry away, contrary to the form of the statute in such case made and provided," etc.

At the trial the defendant moved to quash this in-dictment upon the following grounds: 1st. Because said indictment fails to allege the value of the property charged to have been stolen. 2d. Because it contains no sufficient description of the property alleged to have been stolen. 3d. Because said indictment is vague, uncertain and indefinite, in that it does not sufficiently describe the property alleged to have been stolen to put the party on notice of the offense, and to protect him against a new prosecution for the same offense. This motion was overruled, and such ruling

is the first assignment of error.    There was no error in
this ruling.    Section 2449 of the Revised Statutes, un-
der which this indictment was found, is as follows:
"Whoever commits larceny by stealing any horse,
mare, filly, colt, cow, bull, ox, steer, heifer or calf, hog,
sheep or goat, the property of another, shall be pun-
ished by imprisonment in the State prison not exceed-
ing two years, or by fine not exceeding five hundred
dollars."    It will be observed that under this statute
the larceny of any of the different animals mentioned
receives the same punishment, regardless of its value.
The same penalty is prescribed thereby for the larceny
of the blooded horse worth $5,000 as for the common
calf worth perhaps but $2.    The law is well-settled
that in those cases where the grade of the offense, or
the punishment prescribed therefor, is not measured
by or dependent upon the value of the property stolen,
but is determined entirely by the class or species of
such property, it is not necessary, in an indictment
charging its larceny, to allege or prove any value.
Wells vs. State, 11 Neb. 409, 9 N. W. Rep. 552; Wil-
liams vs. State, 10 Texas App. 8; McDowell vs. State,
61 Ala. 172; State vs. Pedigo, 71 Mo. 443; Maynard
vs. State, 46 Ala. 85; Sheppard vs. State, 42 Ala. 531;
Walker vs. State, 50 Ark. 532; Bishop on Statutory
Crimes (2d. ed.), sec. 427; Rapalje on Larceny and
Kindred Offences, secs. 109–110.    The property stolen
is described in the indictment simply as being "one
cow."    The contention here is that a more certain and
detailed description should have been given, such as
its color, marks or brands, etc.    This contention is not
sustained by the adjudications upon similar statutes;
but, on the contrary, it is held that indictments are
sufficient under such statutes that simply allege the

number and kind or species of animals stolen, in a general way, without any further or more definite description of the particular animal.    Grant vs. State, 3 Texas App. 1.

The defendant moved for a new trial upon the ground that the verdict was contrary to the evidence, but the motion was overruled, and this ruling is assigned as error.    The evidence in the case was as follows:    A. T. G. Parkinson for the State testified that he lived on the Caloosahatchee river, in Lee county, in 1893 and 1894, and at that time owned several head of cattle—four cows and three yearlings—that ranged near his place; that his mark was bolt in one ear, under-slope and upper bit in the other, branded in diamond P; that he last saw those cattle early in December, 1893; that he went away at that time for a little while and never saw them any more; that he never saw any of them outside his pasture fence; that he never sold any of them to the defendant or anyone else.    Ziba King for the State testified that his occupation was cattle raising, and that he had been engaged in it for twenty-five years or more; that he was familiar with the marks and brands of cattle in this country; that he knew Parkinson's mark and brand; that he gave the diamond P brand; that in May or June, 1895, he was on the bay cow hunting and saw a yellow heifer in defendant's mark and brand, that is, upper-slope and under-bit in one ear, and sharp in the other, and branded diamond K, which is a brand that looks like Ks turned face to face. The brand appeared to be a rather new brand.    The heifer also has a diamond P brand on her, which is the brand of Parkinson.    The defendant's brand appeared to be newer than the other one.    The diamond P brand had not

been defaced, but the defendant's brand had been put on in a different place. I do not know whose heifer it was. I only judged by the brand that it belonged to Parkinson. I do not know of any one else in this country giving the diamond P brand. I don't recollect anyone but the defendant giving the diamond K brand. The mark appeared to be an altered mark. Richard Bass for the State testified that his occupation was cow hunting; that he was in the employ of Ziba King; that he was familiar with the marks and brands of cattle in Lee county, and knew the mark and brand of Parkinson, and some of the marks of the defendant; that the defendant gives upper-slope and under-bit in one ear, sharp in the other, and brands diamond K—two Ks facing each other. In May, 1895, I saw some cattle in this mark and brand. We penned some cattle in pens on the bay. There were two head of cattle in the bunch in the defendant's mark and brand—a yellow cow and a brindle steer yearling. The marks was over-slope and under-bit in one ear, sharp in the other, branded with a diamond P. brand on the hip, and a diamond K brand on the side. The defendant claimed to give that mark and brand. The marks on the cow's ears were not very plain, but it was an altered mark. I don't know anyone else in this country who gives the diamond P brand except Parkinson, and no one who gives the diamond K brand except the defendant. I do not know of the defendant making any changes in his marks and brands. I recognized this cow and yearling to be the property of Parkinson because of the diamond P brand. I could not tell what the original mark was, but the mark seemed to have been altered. L. C. McNeill for the State testified as follows: I was

formerly recorder of the marks and brands of Lee county for about two years. I know Parkinson's mark and brand; have marked and branded his cattle ever since he owned cattle. I branded a yellow calf in 1892 or 1893 in Parkinson's mark and brand, the mark being bolt in one ear, under-slope and upper-bit in the other; the brand diamond P. I have recorded cattle for the defendant in the diamond K brand, but am not positive about the marks. I know of no one else that gives the diamond P brand but Parkinson. This constituted the State's evidence in chief.

Bascom S. Johnson for the defendant testified as follows: I live in DeSoto county. My business is cow hunting. I am pretty familiar with cattle in De-Soto and Lee counties. I know a man in DeSoto county who gives the Diamond P brand; his name is Wesley Waldron. I do not know the line between Lee and DeSoto counties. Wesley Waldron has been giving the diamond P brand for three or four years. I hunt cattle for anyone—Ziba King, the Parkers, Crawford and the Whiddens. I have hunted in Lee county on the other side of the Caloosahatchee river. Wesley Waldron's cattle range in DeSoto county, and, I expect, some of them in Lee county. He has about one hundred head. I only know one mark and brand of his. The mark is crop, under-bit and upper-bit in each ear, brand diamond P. I know he gives that brand, because I have seen him branding cattle with it. I do not know how many of his cattle are in Lee county; I have seen some. I don't know exactly where the county line is, but have been told where it was. I am not positive that I ever saw any of his cattle in Lee county. He lives in DeSoto county, near Fish Eating creek. I know defendant's marks and

brands; he has several. He has one over-slope, under-bit in one ear, sharp in the other, brand diamond K. J. W. Hendry for the defendant testified as follows: I live in DeSoto county, five miles from Arcadia. I know the defendant. Wesley Waldron gives the diamond P brand. I don't know his mark. He sold cattle to Charles Y. Crawford, branded with the diamond P brand. Wesley Waldron sold his cattle in that brand, and he let Crawford have some of them for defendant. I can not tell just what date it was. It was about five years ago. Waldron and I delivered the cattle together. Waldron delivered them to me, and I delivered them to Crawford. I delivered them to Crawford for defendant—about thirty head in all—at least ten head diamond P brand, which I delivered to Crawford for defendant. I am not much on the range. Waldron lives at Fish Eating creek, and I live on Josh's creek. I don't know how far Fish Eating creek is from Lee county; do not know whether cattle ranging on Fish Eating creek would go across into Lee county. I did not hunt any in Lee county. Those cattle had the diamond P brand on them. I don't think they had any other brand at the time. Crawford's brand is circle 4. I don't know Waldron's marks. I don't know but one of the defendant's marks, which is sharp in each ear. I never hunted in Waldron's range. I don't know much of his cattle. It is claimed he owns a few head. The defendant himself testified as follows: My business is cattle owner and hunter. I have been in that business ten or twelve years in this range. I know Mr. Parkinson. I never took any of his cattle except a bull of his which I sold four or five years ago for Ziba King, supposing it to be Locklear's, who gave the same mark at that time.

I mean Louis Locklear. I never changed the mark of a yellow calf of Parkinson's, or put my mark or brand on it, or on any of his cattle. Wesley Waldron owns a few cattle, and gives the diamond P brand. His cattle range there on Fish Eating creek. They are liable, I suppose to come into Lee county. I bought cattle from Wesley Waldron in that brand last year and year before. I do not recollect the colors of all of them; some were yellow and some brown. Year before last I bought five at one time. They were stock cattle—cows and heifers. Fish Eating creek is about ten miles north of the line of Lee county. Cattle are liable to go anywhere. These cattle I bought from Waldron I changed the marks of and put my brand on them, letting his brand stay on them, and turning them loose. Richard Bass for the defendant testified as follows: Ziba King and I found that yellow cow in Lee county about six or eight miles from the county line. We drove the cow into DeSoto county, and afterwards drove her back into Lee county. Charles Y. Crawford for the defendant testified as follows: I live in DeSoto county. My business is cattle owner. I have seen cattle in the diamond P brand belonging to Wesley Waldron. I got a few head of them from J. W. Hendry. They were in Wesley Waldron's mark. I am familiar with the mark he claims. I have heard Wesley Waldron say he owned the diamond P brand. I do not know how many cattle he owns in DeSoto county. I do not know the exact date he told me he owned that brand. I never saw any of his cattle recorded in that brand, or anyone else's cattle so recorded. I know that he gives that brand, because he told me so. I have seen a few head of his cattle in the woods in the diamond P. brand. There

were a few head in our pasture about three weeks ago. I don't know who put them there; don't know who owns them, unless it was Waldron.

Richard Bass in rebuttal for the State testified as follows: I never heard of Wesley Waldron giving the diamond P brand. I do not know that he does not give it, only I never saw any of his cattle in that brand. Ziba King in rebuttal for the State testified as follows: I never heard of Wesley Waldron giving the diamond P brand. I saw something that looked like one of my brands changed to something with a diamond in it. This comprises all the testimony adduced in the case.

We have no hisitancy in coming to the conclusion that the defendant's motion for new trial should have been granted upon the ground that the verdict of conviction is not supported by this evidence. In the first place, the proof is meager and indefinite as to whether larceny has been committed at all or not. The owner of the alleged stolen cow testified that some of his cattle disappeared during his absence from home, and that he had not seen them since. He also testified that he had not sold any of them to the defendant or anyone else, but he fails to swear that he may not have given them away to some one, or whether they may not have been seized and sold for debt, or otherwise disposed of with his knowledge and consent. He nowhere states or intimates that he had had any cattle stolen by anyone. The defendant is charged here with larceny, which is defined to be the felonious stealing, taking and carrying away of the personal property of another. The proof shows that two parties, out in the wilds along the coast, engaged in cattle hunting, came across a cow, supposed to be Parkinson's because they discover his brand upon it, and upon it also they see

the brand of the defendant. Its ears appear also to
have had former marks altered. The animal, as we
understand the evidence, was not in the possession of
the defendant or anyone else, but was running free
and at large upon the common range. There is not a
word of proof connecting the defendant with the
stealing, the taking, or the carrying away of the ani-
mal; nor, indeed, is there any proof that it was ever
carried away by the defendant or anyone else. In
Commonwealth vs. Adams, 7 Gray, 43, it is said that
"a taking, without a carrying away, or a carrying
away, without a taking, is not larceny." The bare
finding of such an animal at large upon the common
range where everybody's cattle roam at will, with the
brand of two persons upon it, the one brand appearing
to have been put there more recently than the other,
and with its ear-marks presenting the appearance of
having been altered, with no one in possession or con-
trol of it, and with no one claiming it, is not sufficient
of itself, without other proofs showing a felonious
stealing, taking and carrying away, to justify a con-
viction for larceny of the person whose brand ap-
peared to have been put upon the animal last in point
of time; especially so, in the absence of any proof as
to who put the latter's brand on, or whether it was
done with his knowledge or consent. Section 2474 of
the Revised Statutes makes it a distinct and substan-
tive offense to fraudulently alter or change the mark
or brand of any animal with intent to claim the same,
or to prevent identification by the true owner, and the
punishment prescribed therefor is more severe than
for the crime here charged against this defendant. The
proofs before us in the record may have tended to sus-
tain such a charge of the fraudulent alteration of

marks and brands, but without some further or more definite proof than is furnished in this record to connect the defendant with a stealing, taking and carrying away of the animal alleged to have been stolen, his conviction for its larceny was unauthorized.

The judgment of the court below is reversed and a new trial ordered.